2021 IL App (1st) 190129

No. 1-19-0129

Second Division
November 23, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) ) | Nos. 13 CR 10271; 13 CR 10273; 13 CR 10272; 16 CR 7125 |
| v. | ) ) | |
| MICHAEL TOLLIVER, | ) ) | Honorable Diane Cannon, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    Following guilty pleas to two charges of aggravated battery in a public place (case Nos. 13-CR-10271 and 13-CR-10272) and one charge of unlawful restraint (case No. 13-CR-10273), defendant-appellant, Michael Tolliver, was sentenced to 18 months' adult probation, the term of which was set to expire on August 17, 2015. On May 27, 2015, the State sought and was granted leave to file what would be its third petition for violation of probation (VOP). On August 19, 2015, defendant appeared in court, without counsel. Following the August court proceeding, the trial

court, without determining whether defendant violated conditions of his probation, extended the term.

¶ 2    On April 23, 2016, the court made probable cause findings for new charges against defendant for unlawful use of a weapon by a felon and aggravated battery with discharge of a firearm. The State was thereafter granted leave to file a new petition for VOP. In June 2018, defendant entered into a negotiated plea to the unlawful use of a weapon by a felon and aggravated battery with discharge of a firearm charges and was sentenced to 12 years' imprisonment (case No. 16-CR-7125). Later, on June 20, 2018, defendant pleaded guilty to the probation violation. Pursuant to the plea agreement, the trial court sentenced defendant to two years in prison in case No. 13-CR-10271, five years in prison in case No. 13-CR-10272, and three years in prison in case No. 13-CR-10273. All three sentences ran consecutive to defendant's 12-year sentence in case No. 16-CR-7125.

¶ 3    For the reasons that follow, we reverse the trial court's revocation judgment for VOP in case Nos. 13-CR-10271, 13-CR-10272, and 13-CR-10273 and vacate the sentences entered thereon.

¶ 4                                I. BACKGROUND

¶ 5    In 2013, defendant, who was then 17 years old, was charged in three separate cases, two for aggravated battery in a public place (case Nos. 13-CR-10271 and 13-CR-10272) and one for unlawful restraint (case No. 13-CR-10273). On February 18, 2014, defendant entered an agreed plea of guilty on all three charges in exchange for a sentence of 18 months' adult probation. The terms of probation included completion of 120 hours of community service, completion of requirements for either a high school diploma or GED, payment of $684 in court costs and fines,

and $180 in probation fees. Defendant was required to satisfy the conditions of his probation by August 17, 2015.

¶ 6    Over the course of the next several months, the State sought leave to file petitions for VOP. The first petition was filed on June 14, 2014, entered and continued and, on July 16, 2014, taken off call. The second petition was filed on August 13, 2014, entered, and continued and, on September 17, 2014, withdrawn by the State.

¶ 7    On May 27, 2015, the State sought leave to file a third petition for VOP. The petition alleged that defendant had completed 52 out of the 120 hours of community service and had not paid all of his fines. During the proceeding, the trial judge inquired of defendant as follows: "You have probation on three robberies?" The State responded in the affirmative and requested leave to file "probation on all three."[1] The court made no determination that defendant had violated any of the conditions of his probation. Nevertheless, the court granted the State leave to file the petition and remanded defendant to the custody of the Cook County sheriff, without bail.

¶ 8    On June 10, 2015, the next court date, defense counsel appeared in court and argued that defendant's probation was not set to terminate until August 2015 and that he could complete his remaining community service hours when released from custody. The court again made no determination that defendant had violated any of the conditions of his probation. The court released defendant on a $20,000 I-bond and "entered and continued" the VOP to July 22, 2015.[2]

---

[1]Defendant was originally charged with attempt robbery, related to the aggravated battery and unlawful restraint charges. The criminal disposition sheets reflect that the attempted robbery was nol-prossed, which is consistent with the court's February 18, 2014, probation sentencing order, as well as the State's petitions for VOP, which reflect only the aggravated battery and unlawful restraint charges.

[2]The trial court's form reflecting the bond, filed stamped June 11, 2014, identifies the case as "13 CR 1027103" and the charge as "720-5/18-1(A)," "Robbery."

¶ 9    On July 22, 2015, defendant appeared in court. At that time, his probation officer informed the court that defendant had received his high school diploma, was continuing his community service, had completed 76 out of the 120 hours of community service, and had paid some money toward his fees. The court made no determination that defendant had violated any of the conditions of his probation, but nonetheless, "entered and continued" the State's May 2015 petition for VOP to August 19, 2015.

¶ 10    On August 19, 2015, two days after his probation term had expired, defendant was present in court. Also present were Assistant State's Attorney Frank Lamas and the probation officer. Defendant was not represented by counsel at this proceeding. The following colloquy occurred:

"[PROBATION OFFICER]: Your Honor, actually, he's here for status of his community service, his GED. He did—he has 32 hours of community service remaining. He did graduate from high school on June 12th. He plans to enroll in college for the fall.

THE COURT: All right.

THE DEFENDANT: Your honor . . .

THE COURT: Speak up.

THE DEFENDANT: I went—there was a confusion between the service hours between Officer Bowman and Montgomery. This is the updated one saying that all of the hours are completed.

THE COURT: All right. Do that—you can handle that with your probation officer. We'll see you on the next status date. You're going to apply for college?

* * *

THE COURT: Okay. We'll see you back here September 23rd. Bring any papers that you have. Let us know if you're in school.

THE DEFENDANT: Yes, ma'am.

MR. LAMAS: He was supposed to term, according to Probation, on 8/17, but there have been VOPs.

THE COURT: You're still on probation. See you on 9/23. Don't pick up any more cases. You're still on probation. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: Come back in here if you've enrolled with all the evidence you've enrolled. Do you understand?

THE DEFENDANT: Yes, ma'am."

¶ 11    On September 23, 2015, defendant returned to court. Additionally present in the courtroom were Assistant State's Attorney Lamas, and Assistant Public Defender Anthony Plaid on behalf of defendant. During this proceeding, the following colloquy occurred:

"THE COURT: This is up for status on school?

[PROBATION OFFICER]: Yes.

THE COURT: Mr. Tolliver, this is up for status on your GED, correct?

THE DEFENDANT: I got a high school diploma and—

THE COURT: High school diploma. Something is wrong.

MR. LAMAS: On the last court date he had 32 hours community service remaining, and I had a note that he graduated high school on 6-12 and was applying for college.

THE COURT: Right. And you had community service to do.

THE DEFENDANT: Yes, which is completed.

[PROBATION OFFICER]: Which is completed. It was completed August 18th. On his last report date, he provided a copy of his orientation schedule for classes at Harold Washington College.

\* \* \*

THE COURT: Have you gone to classes?

THE DEFENDANT: No, Your Honor.

THE COURT: Why not?

THE DEFENDANT: I'm still working on the schedule with the counselor.

THE COURT: School started, okay. You're telling me they still don't—you're still working on a schedule? That's wrong—

THE DEFENDANT: I went—

THE COURT: Listen, don't start. Okay. Don't go down that road of lies again, okay. You got three robberies here. We're trying to do something other than the penitentiary. Don't start lying to me now, do you understand?

THE DEFENDANT: Yes, ma'am."

¶ 12     The case was then paused and later recalled. Upon recall, the following colloquy occurred:

"THE COURT: Have you had an opportunity to speak with your lawyer?

THE DEFENDANT: Yes, ma'am.

THE COURT: So when are you starting school or going to have your—you have your degree.

THE DEFENDANT: I went to orientation, took a placement test, and because all the classes were filled for that degree once I spoke to a counselor; but besides that I was able to finish my hours and my fees, and now I'm planning to take classes in the spring because the classes were filled for my degree.

THE COURT: What are you going to do between now and spring?

THE DEFENDANT: Work, Your Honor.

THE COURT: Where?

THE DEFENDANT: Currently I have a job at a meat packing factory by Chinatown.

THE COURT: How many days a week are you working?

THE DEFENDANT: Six. Five, usually six if I get the overtime.

THE COURT: All right.

MR. PLAID: In Mr. Tolliver's case I believe he's completed all of his conditions of probation. He's completed a bunch of community service hours.

THE COURT: But he did not do them as scheduled and that's why we're monitoring him so he doesn't wind up in the penitentiary on these robbery cases, right?

THE DEFENDANT: (No response.)

THE COURT: Correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. So we're going to keep up the monitoring. VOP is entered and continued again. We'll see you back here on November 18th.

\* \* \*

THE COURT: Don't pick up any cases, felony or misdemeanor. You're still on probation, sir.

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: See you November 18th. VOP entered and continued. 11-18 for status."

¶ 13 At the November court date, the probation officer advised the court that the case was up for status on defendant's "education program" and that he was enrolled for orientation at Greater West Town and would start the program in January 2016. The court responded, "[y]ou're still on probation." A next court date was scheduled for December 9, 2015, at which time, the following colloquy occurred:

"THE COURT: Are these new cases?

MR. PLAID: No, Judge. It's a VOP.

THE COURT: Based on?

MR. PLAID: It was based on community service. He has done all the conditions, completed the conditions of the probation. Your Honor wanted to continue monitoring him. He is enrolled in the Greater West Town Training Partnership. It looks like forklift driving. ***

THE COURT: VOP on new cases, failure to obtain GED, failure to complete community service. Have you done your community service?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you gotten your GED?

THE DEFENDANT: High school diploma.

THE COURT: Yes.

MR. PLAID: He graduated from high school.

THE COURT: Keep up the good work. See you back here in February.

* * *

THE COURT: Three violations entered and continued."

¶ 14     The case was continued to February 10, 2016, at which time the following colloquy occurred:

"THE COURT: Good Morning, Mr. Tolliver.

THE DEFENDANT: Good Morning. Is it a trial, VOP status, what is it? Does anyone know why Mr. Tolliver is here?[3]

MR. PLAID: Yes. It's a status judge. He completed all the terms. You brought him back because he's currently in a program. He's in a Greater West Town Training Partnership Program. *** Here is his letter from the program.

THE COURT: It's for his GED?

MR. PLAID: He already has a high school diploma.

THE COURT: Pardon me.

MR. PLAID: He already has a high school diploma. He's just in that program to help with work skills.

---

[3]Although the record of proceedings identifies defendant as the speaker, it is apparent that the speaker is the trial judge.

THE COURT: Okay. Go down and do a drug test today, get a job. See you back here on March 2nd. VOP entered and continued, 3/2."

¶ 15    At the March 2, 2016, proceeding, the probation officer advised the court that defendant's February drug test was negative and that he had been attending his forklift driving program and would complete the program by April. Further, the probation officer advised the court that defendant had "already completed all [of] his [probation] terms which is really I think what Your Honor is looking for him to finish." In response, the court continued the case until March 16, 2016.

¶ 16    At the March 16, 2016, proceeding, the probation officer advised the court that defendant had taken a drug test on March 8, 2016, which was negative. The court made no inquiry regarding defendant's employment or forklift training and instead ordered "I want you to drop today. See you back here March 29. Drop today. Understand?"

¶ 17    On March 29, 2016, defendant appeared in court and the probation officer informed the court that defendant's drug tests were negative. In response, the court ordered defendant to "drop today" and "entered and continued" the State's May 2015 petition for VOP to May 11, 2016.

¶ 18    On June 20, 2018, the State informed the trial court that on June 1, 2018, defendant pleaded guilty to two counts of aggravated battery with a firearm in exchange for concurrent 12-year prison sentences. The trial court noted that defendant was on probation for the "2013 robbery and two 2013 aggravated batteries." The parties stipulated that defendant was convicted of aggravated battery with a firearm in the new case (case No. 16-CR-7125). Defendant subsequently agreed to plead guilty to the VOPs in exchange for an aggregate 10-year prison sentence. The court found a sufficient basis for the plea and entered findings of guilty of violating probation on the three 2013 offenses. Pursuant to the plea agreement, the court sentenced defendant to 2 years' imprisonment in case No. 13-CR-10271, 5 years' imprisonment in case No. 13-CR-10272, and 3 years'

imprisonment in case No. 13-CR-10273, all to run consecutive to defendant's 12-year sentence in case No. 16-CR-7125.

¶ 19    Defendant filed a motion for reconsideration, which the court denied on December 17, 2018. Notice of appeal was filed on that same date.

¶ 20                                II. ANALYSIS

¶ 21    On appeal, defendant argues that the trial court did not have authority to extend the term of his probation on August 19, 2015, because the court "failed to hold a hearing that comported with due process." Because the court had no authority, defendant maintains that the court's subsequent June 2018 probation revocation and sentencing are void and that reversal is required. The State responds that defendant was not denied due process because no hearing occurred on August 19, 2015. The State further maintains that defendant's probation term was not extended beyond the original August 17 expiration date but instead was properly tolled by the filed petitions for VOP. The State contends that defendant's June 2018 offenses constituted a probation violation which supported the court's revocation and sentencing. Thus, the State urges affirmance of the judgment.

¶ 22                                A. Forfeiture

¶ 23    Defendant acknowledges that he did not raise the void judgment issue in the trial court and that, ordinarily, the failure to raise an argument at trial and in a posttrial motion results in forfeiture of the issue on appeal. See *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988). He maintains, however, that forfeiture does not apply. Citing *People v. Wade*, 116 Ill. 2d 1, 5 (1987), defendant asserts that because a void judgment may be attacked at any time, either directly or collaterally, his claims are not barred. Alternatively, he argues that due process errors occurred at the August 19, 2015, proceeding and, thus, we may consider his claims under the plain-error doctrine. See *People v.*

*Herring*, 327 Ill. App. 3d 259, 262 (2002). The State, without conceding its position regarding due process, acknowledges our supreme court's recognition that "[t]he imposition of an unauthorized sentence affects substantial rights and, thus, may be considered by a reviewing court even if not properly preserved in the trial court." (Internal quotation marks omitted.) *People v. Fort*, 2017 IL 118966, ¶ 19.

¶ 24    Mindful of our supreme court's expressed concerns over the inappropriate interchange between void and voidable judgments (*People v. Davis*, 156 Ill. 2d 149, 155 (1993) ("[t]he term 'void' is so frequently employed interchangeably with the term 'voidable' as to have lost its primary significance.")), we first consider *Wade* in the context of defendant's voidness argument. In *Wade*, the defendant pled guilty to a charge of robbery as part of a negotiated plea agreement and was originally sentenced to 90 days in the Cook County House of Corrections, and to 36 months' probation. 116 Ill. 2d at 4. Subsequently, the trial court was advised that, based on defendant's prior convictions for armed robbery and rape, he was ineligible for probation under the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1983, ch. 38, ¶ 1005-5-3(c)(2)(F)). Accordingly, the court vacated the probation order and permitted the defendant to enter a plea of not guilty. *Wade*, 116 Ill. 2d at 4.

¶ 25    Following a jury trial, the defendant was found guilty of robbery and sentenced to a term of nine years. *Id.* The appellate court affirmed the conviction, and the supreme court granted the defendant's petition for leave to appeal. *Id.* On appeal before the supreme court, the defendant argued that the trial court erred in vacating his probation sentence because 30 days had passed since imposition of the sentence and, therefore, the court had lost jurisdiction. *Id.* at 4-5. The State argued that because of the Code's prohibition, the court lacked authority to impose a sentence of

probation. Thus, the court's probation sentencing order was void and could be challenged at any time. *Id.* at 5.

¶ 26   In affirming, the supreme court noted that a "void judgment is one entered by a court without jurisdiction of the parties or the subject matter" or, is one entered by a court that lacks "the inherent power to make or enter the particular order involved." (Internal quotation marks omitted.) *Id.* In rejecting the defendant's argument that the trial court lacked jurisdiction, the court found that the Code did not permit probation and thus the judgment, being void, could be attacked at any time, either directly or collaterally. *Id.*

¶ 27   Since *Wade*, our supreme court has had occasion to consider the concepts of "void" and "voidable" in both the civil and criminal contexts. In *Davis*, 156 Ill. 2d 149, the court undertook the task of reviewing the manner in which the terms had been used in judicial opinions and, in the course of its analysis, offered both reaffirming and clarifying principles. In that case, the court was tasked to decide whether an erroneous sentence constituted a void judgment, subject to collateral attack. *Id.* at 154-58. The court noted that "[w]hether a judgment is void or voidable presents a question of jurisdiction." *Id.* at 155 (citing *Herb v. Pitcairn*, 384 Ill. 237, 241 (1943)). As it had held in *Wade*, the court reiterated that where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked either directly or indirectly at any time. *Id.* On the other hand, a judgment that is voidable "is one entered erroneously by a court having jurisdiction and is not subject to collateral attack." *Id.* at 155-56. The court noted, however, that "jurisdiction or power to render a particular judgment does not mean that the judgment rendered must be the one that should have been rendered." *Id.* at 156. This is so because jurisdiction includes "the power to decide wrong as well as to decide right." *Id.* (citing *People v. Kidd*, 398 Ill. 405, 409 (1947)). Accordingly, although the lower court's sentencing judgment was in error, the supreme court held

that the error did not divest the trial court of jurisdiction. *Id.* at 157. The erroneous judgment was deemed by the court to be "voidable," and, thus, not subject to collateral attack. *Id.* at 157-58.

¶ 28    Years later, in *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 530 (2001), the analysis and disposition of which were met with a strong dissent, the court had occasion to address the concepts of void and voidable in the context of a civil proceeding. Briefly, *Steinbrecher* involved the partition and the circuit court's order of a judicial sale of real property pursuant to the Illinois Partition Act (Act). (735 ILCS 5/17-101, *et seq.* (West 1994).) *Id.* at 516. The appellate court vacated the sale and remanded the case for further proceedings. *Id.* On appeal in the supreme court, the majority held that because the appellee had failed to perfect a stay of the circuit court's judgment, there was no justiciable matter upon which the appellate court could exercise jurisdiction. *Id.* at 532.

¶ 29    The dissent criticized the majority's holding for its failure to address the concerns raised by the appellee regarding the authority of the circuit court to order the sale. *Id.* at 533 (Freeman, J., dissenting, joined by McMorrow and Kilbride, JJ.). Relevant here, the dissent noted the appellee's argument to the effect that the circuit court failed to comply with the statutorily defined procedures governing judicial sale of the property. *Id.* at 538. The appellee maintained that because the court's authority to sell the property was statutorily derived, the court's failure to comply with the statutory procedures in conducting the sale divested the court of jurisdiction and its ruling was therefore void. *Id.*

¶ 30    The seeming sticking point between the majority and the dissenting justices in *Steinbrecher* was the majority's construction of "inherent power." The dissent argued that because the circuit court's "inherent authority" to adjudicate the controversy originated from the statute in the first place, the court's failure to comply with the statute's procedures divested the court of

jurisdiction, rendering its ruling void, as opposed to voidable. *Id.* at 543-45. " 'It is by reason of our constitution that our circuit courts acquire power to adjudge ***.' " *Id.* at 548 (quoting *In re M.M.*, 156 Ill. 2d 53, 65 (1993)). However, " 'it is by reason of the statute that the justiciable matter exists,' " and the circuit court must proceed within the boundaries of the statute. *Id.* (quoting *In re M.M.*, 156 Ill. 2d at 65-66). The dissent maintained that the supreme court had consistently recognized that the circuit court must have the inherent authority to make or enter the particular order involved. *Id.* at 549.

¶ 31    In rejecting the dissent's jurisdictional source argument, the majority noted that the " 'inherent authority' " requirement existed prior to the 1964 judicial reform. *Id.* at 529. However, pursuant to the Illinois Constitution, as amended in 1964, our courts are no longer courts of limited jurisdiction but are instead vested with unlimited original jurisdiction over all justiciable matters. *Id.* at 529-30. The " 'inherent authority' " requirement applies only to courts of limited jurisdiction and administrative agencies. *Id.* at 530. Because the circuit court is a court of original and general jurisdiction, it no longer needed to look to a statute for its jurisdictional authority. *Id.* The majority stated that, notwithstanding the circuit court's failure to adhere to the statutory procedures, the court retained jurisdiction and its ruling was not void. *Id.* at 531.

¶ 32    More recently, in *People v. Castleberry*, 2015 IL 116916, ¶ 13, which we find more akin to the issue here, the court considered the concept of subject matter jurisdiction in the context of what was commonly referred to as the "void sentencing rule," which provided that "[a] sentence which does not conform to a statutory requirement is void." (Internal quotation marks omitted.) See *People v. Arna*, 168 Ill. 2d 107 (1995). In its discussion, the court noted that the concept of jurisdiction is generally understood to comprise personal and subject matter jurisdiction. *Castleberry*, 2015 IL 116916, ¶ 12. "Subject matter jurisdiction refers to a court's power to hear

and determine cases of the general class to which the proceeding in question belongs." (Internal quotation marks omitted.) *Id.* In sounding the void sentencing rule's death knell, the court relied heavily on its reasoning in a number of civil cases that had addressed the jurisdictional issue. See, *e.g.*, *LVNV Funding, LLC v. Trice*, 2015 IL 116129; *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002); *Steinbrecher*, 197 Ill. 2d 514. The court explained that "the failure to comply with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction or constitute a nonwaivable condition precedent to the circuit court's jurisdiction." (Internal quotation marks omitted.) *Castleberry*, 2015 IL 116916, ¶ 15. Because a circuit court is a court of general jurisdiction, the court found, as it had stated earlier in *Steinbrecher*, that it need not look to statute for its jurisdictional authority. *Id.* ¶ 19.

¶ 33 Here, defendant argues that the trial court lacked authority to extend his probation term because it failed to comply with the Code. Defendant notes that under the Code or the "statutory scheme for sentences of probation, a court cannot extend the term of probation without notice and hearing and a finding that defendant has violated his probation." He not additionally that, evidence "shall be presented in open court with the right of confrontation, cross-examination, and representation by counsel." Consistent with *Castleberry*, we conclude that in this case, the trial court's alleged failure to adhere to the Code did not divest it of subject matter jurisdiction. Thus, any judgment entered in contravention of the applicable statutory requirements was not void, but voidable. See *People v. Williams*, 2017 IL App (1st) 123357-B (holding that subject matter jurisdiction is not affected by the court's entry of an erroneous judgment).

¶ 34 Although *Castleberry*, and the cases upon which it relies, defeat defendant's characterization of the revocation judgment as void, our review of the claimed error is not necessarily precluded. Because the alleged erroneous judgment is voidable, as opposed to void,

and further, because defendant's argument pertains to a due process violation which was not properly preserved, as defendant correctly notes, whether the judgment is reversible may be reviewed for plain error. See *Herring*, 327 Ill. App. 3d at 262 ("the right to counsel is so fundamental that we will review as plain error a claim that there was no effective waiver of counsel although the issue was not raised in the trial court").

¶ 35    Under the two-pronged plain-error doctrine, a reviewing court may consider an unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. See *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). The second prong, or the substantial rights prong, guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial. *Id.* at 186. "Prejudice to the defendant is presumed because of the importance of the right involved ***." *Id.* at 187. Even so, "the burden of persuasion remains with the defendant." *Id.* Further, constitutional errors can be forfeited (see *People v. Thurow*, 203 Ill. 2d 352, 363-64 (2003)) if the error is not of such magnitude that it deprives the defendant of a fair trial (see *People v. Graham*, 206 Ill. 2d 465, 476 (2003)).

¶ 36    The first step in any plain-error analysis is to determine whether any error occurred at all. *People v. Walker*, 232 Ill. 2d 113, 124 (2009). Obviously, if no error occurred, there can be no plain error, and we must honor the procedural bar. *People v. Eppinger*, 2013 IL 114121, ¶ 19. Whether an error occurred requires that we conduct a substantive review of the issue. *Walker*, 232 Ill. 2d at 125 (citing *People v. Johnson*, 208 Ill. 2d 53, 64 (2003)). Accordingly, we begin our analysis with a review of the statutory requirements related to a sentence of probation.

¶ 37                                    B. Probation

¶ 38    In Illinois, sentences of probation and conditional discharge are provided for in Chapter V, article 6, of the Code (730 ILCS 5/5-6-1 *et seq.* (West 2014)). The conditions of probation are set forth in section 5-6-3 of the Code. *Id.* § 5-6-3. Of the several conditions listed therein, the length of a probation term is not included among them. See *id.*; see also *People v. Lipscomb*, 332 Ill. App. 3d 322, 325 (2002). Pursuant to the Code, notice of the filing of a VOP tolls the period of probation until final determination of the charge, and the term of probation shall not run until the hearing and disposition of the petition for violation. 730 ILCS 5/5-6-4(a) (West 2014). Upon the filing of a VOP, the State bears the burden of going forward with evidence of the violation and proving the violation by a preponderance of the evidence. *Id.* § 5-6-4(c).

¶ 39    Under our statutory scheme, a probation violation hearing must comport with due process requirements. *People v. Steele*, 283 Ill. App. 3d 413, 415 (1996). Those requirements are satisfied if the probationer (1) is given notice of the proceedings; (2) has the opportunity to be heard; (3) has the opportunity to present evidence and confront witnesses; and (4) is represented by counsel. *Id.* This court has additionally held that a defendant is entitled to "(1) a fair determination that the acts upon which the probation violation is predicated actually took place, and (2) fairness throughout the duration of the proceeding." *Id.* (citing *People v. Allegri*, 109 Ill. 2d 309 (1985)). Unlike under federal law, the right to counsel at a probation violation hearing is absolute. See *People v. Lindsey*, 199 Ill. 2d 460, 474 (2002).

¶ 40                                 C. Standard of Review

¶ 41    Generally, a trial court's sentencing decisions are reviewed for an abuse of discretion. *People v. Florey*, 153 Ill. App. 3d 530, 541 (1987). Correspondingly, the court's decision to grant or revoke probation is reviewed under that standard. *People v. Sims*, 32 Ill. 2d 591, 596 (1965).

However, whether a defendant's due process rights have been violated is a question of law, which we review *de novo*. *People v. Hall*, 198 Ill. 2d 173, 177 (2001) (citing *People v. Dameron*, 196 Ill. 2d 156, 162 (2001)). Due process entitles an individual "*the opportunity to be heard at a meaningful time and in a meaningful manner*." (Emphasis added.) *In re D.W.*, 214 Ill. 2d 289, 316 (2005).

¶ 42                                   D. August 19, 2015, Proceeding

¶ 43    Defendant contends that he was denied due process when, on August 19, 2015, the circuit court extended his probation term. In support of his claim, he argues that, at the time of the proceeding, defense counsel was not present in court and that he had already satisfied all the conditions of his 18-month probation sentence. The State responds that defendant's claimed due process and procedural rights are not applicable because the record shows that no hearing took place on August 19, 2015, regarding defendant's VOPs.

¶ 44    Therein lies the problem. Under the Code, the trial court "may extend any period of probation *** beyond the limits set forth in [the Code] *upon a violation of a condition of the probation*." (Emphasis added.) 730 ILCS 5/5-6-2(e) (West 2014). However, the court cannot alter the length of a defendant's probation term without notice and hearing and a finding that defendant has violated his probation. *Lipscomb*, 332 Ill. App. 3d at 325; *In re Sneed*, 72 Ill. 2d 326 (1978) (where length of probation term was not a condition of probation under the juvenile probation statute, length of the juvenile probationer's term could not be properly extended without a hearing resulting in a violation finding). "*Upon the expiration* or termination of the period of probation or of conditional discharge, *the court shall enter an order discharging the offender.*" (Emphases added.) 730 ILCS 5/5-6-2(d) (West 2014).

¶ 45    Here, at the August 19, 2015, proceeding, the court was put on notice by the State that defendant's probation term had expired on August 17 but that he had "VOPs." Defendant, present in the court without counsel, attempted, at the very least, to alert the court regarding a discrepancy in his community service hours and informed the court that he had completed his community service. Prior to setting a next court date, the court made no admonishments to defendant regarding his rights, but more significantly, the court demanded nothing of the State regarding its alleged VOPs. No hearing was requested by the State, no hearing was required by the court, and no hearing was held. In fact, no determination was ever made on the State's May 2015 petition for VOP until June 2018, more than three years from the date leave was granted to the State to file, and nearly three years after defendant had fully satisfied the conditions of his probation. What might have been intended to be a "status" as the State insists, resulted instead in an extension of defendant's probation sentence, without the requisite due process protections, mainly, a hearing on the alleged violations, or even the suggestion of one.

¶ 46    Even accepting that no due process violations occurred at the August proceeding, or that defendant's probation was not extended at that time, the same cannot be said of the September proceeding or of any of the several proceedings that followed. No plausible explanation can be offered for the court's continued extensions of defendant's probation term beyond the probation period. On the September 23, 2015, return date, the court was apprised that defendant had successfully completed all of the conditions of his probation. The State offered nothing in rebuttal. The court not only extended the term, but imposed additional conditions and, once again, entered and continued the State's May 2015 petition for VOP, stating, without more, that defendant "had not completed [the conditions] as scheduled."

¶ 47     Although not unreasonable for the court to have sought verification from the appropriate authorities concerning defendant's compliance with the probation conditions, by the time of the September proceeding, the court had all the verification it needed. Once again, the State, whose burden it was to prove any violations, neither rebutted counsel's assertion that the conditions had been satisfied nor did it put forth any evidence to support its alleged violations. At this point, in the absence of any evidence of a violation, the only proper ruling for the court was to discharge the defendant. It did not do so. There was simply the court's erroneous, unsupported and unexplained assertion that defendant had not completed the conditions in the way "they were scheduled."

¶ 48     Defendant appeared in court, as ordered, in November 2015, February 2016, and again in March 2016, now more than six months beyond expiration of his probation term. At the March proceeding, the court was again apprised of defendant's completion of the probation conditions. Again, the State offered nothing in rebuttal, there was no hearing on the alleged violation, the term was continued and again, new conditions were added, this time, drug tests.

¶ 49     Clearly, the court's continuance of the State's May 2015 petition for VOP, without evidence of a violation, was a denial of defendant's due process. The court was advised, not once, but on four separate occasions, September 23, 2015, November 18, 2015, February 10, 2016, and March 2, 2016, that defendant had already completed the conditions of his probation. Even if we could conclude that the court's continuance to September 2015 was reasonable, to further extend the term indefinitely, and then to add conditions post completion, without one iota of evidence of a violation, was at the very least an abuse of discretion.

¶ 50     Defendant invites our attention to *Lipscomb*, 332 Ill. App. 3d 322, as analogous. In *Lipscomb*, the defendant had been originally sentenced to a two-year term of probation. *Id.* at 323.

Three months into his term, he was charged with a violation. *Id.* He entered an admission to the charge and signed a contract in which he agreed to an 18-month term in an alternative probation program. *Id.* Language in the contract purportedly empowered the court to modify his sentence of probation for his failure to comply. *Id.* Prior to the 18-month term expiration, defendant appeared at a hearing, *pro se*, and agreed to have his probation term extended for an additional six months. *Id.* at 324. During that additional six-month period, the State filed two petitions in which it alleged violations, resulting in a revocation of probation and a three-year prison term. *Id.* at 323-24.

¶ 51 On appeal, the court found that the six-month extension of the probation term failed to comply with due process and was therefore deemed invalid. In so finding, the court held that statute designated a specific probation and allows for extension beyond that term only where there is a finding of a violation. *Id.* at 325. "[T]he trial court could not alter the length of defendant's probationary term without notice and hearing and a finding that defendant had violated his probation." *Id.*; see also 730 ILCS 5/5-6-4 (West 2014). Because the extension was itself invalid, the revocation proceedings carried out during the extended period were also deemed invalid.

¶ 52 The State argues that *Lipscomb* is inapposite because, in contrast to *Lipscomb*, here petitions for the VOP had been filed before the extension of defendant's probationary term, and defendant had received notice. The State maintains that at the time of the August 19 proceeding, the court had jurisdiction as the petition for VOP had been filed. Further, "defendant's probation was not revoked; rather, the VOPs were simply entered and continued."

¶ 53 The State is correct that at the August 2015 proceeding defendant's probation was not revoked. That would come later. However, at the August 2015 proceeding, the court announced to defendant that he was "still on probation" and, on every court date thereafter, failed to acknowledge satisfaction of the conditions or that the term had expired or to discharge him. The

practical effect of which was to extend probation beyond the term. Once the conditions of probation have been successfully completed, absent a violation occurring prior to completion, an extension beyond the term, by any other name, "VOP entered and continued" or otherwise, is an extension of probation. In this case, that extension occurred in the face of the unrepresented defendant, attempting to present evidence of satisfactory completion of the conditions of his probation and without any demand on the State to either present evidence to the contrary or to present evidence in support of its VOP petition to revoke probation. Again, even accepting that no impropriety occurred at the August proceeding, we cannot say the same for the several proceedings that followed.

¶ 54     The State filed its petition for VOP of the February 2014 probation sentence in May 2015. In its petition, the State alleged that defendant failed to complete his community service and failed to pay his court costs, fees, and fines. However, defendant's probation term on the underlying offenses was not set to expire until August 17, 2015. At the August 19, 2015, proceeding, the State acknowledged the same. Evidence in the record shows that defendant had successfully completed the conditions of his probation, at the earliest by the August 17, 2015, and at the latest, by September 2015. By that time, and certainly by the time of the September 2015 court proceeding, defendant had obtained his high school diploma, completed his community service hours, and paid his probation fees and his court fines and fees. Nevertheless, at the September proceeding, the court, seemingly indifferent to defense counsel's assertion that defendant had satisfied the conditions of his probation, commented that he had not done so as scheduled.

¶ 55     The State makes no argument that defendant had not by that time satisfied the conditions of his probation. Clearly had the court timely conducted a hearing on the State's May 2015 petition for VOP, the State would not have been able to sustain its burden and defendant would have been

entitled to discharge. Absent a hearing, the extension was not permissible, and defendant was entitled to be discharged. The court's continuing and indefinite extensions of defendant's February 2014 probation sentence term, without a hearing and determination of a violation, was clear error, the effect of which was a denial of defendant's due process. Accordingly, we hold that defendant has met his burden to demonstrate plain error.

¶ 56                                    E. June 2018 Revocation

¶ 57    Defendant argues that because his probation term was not validly extended, the circuit court's 2018 revocation and imposition of a 10-year prison sentence was void. The State argues that the filed May 2015 petition for VOP, which was entered and continued, properly tolled the term of probation and, thus, the trial court's subsequent judgment revoking defendant's probation and sentencing him to 10 years was proper.

¶ 58    The State seeks refuge in *In re Thompson*, 79 Ill. 2d 262 (1980), arguing that, like in that case, because the petitions for VOP were filed prior to the end of defendant's probation term, there was no impropriety in the postterm hearing. Based on the State's reading of *Thompson*, once a petition for VOP is filed, a probation term may be indefinitely tolled, even absent evidence of a violation.

¶ 59    *Thompson* is inapposite and does not control the outcome here. For one, in *Thompson*, the conduct alleged in the petition for VOP was the same conduct that was the subject of the VOP hearing. *Id.* at 263-64. Here, the conduct alleged in the May 2015 petition for VOP was not the same conduct that was the subject of the June 2018 VOP hearing. Further, in *Thompson*, at the time of the VOP filing, the alleged violation had occurred and a hearing on the violation occurred soon after the probation term ended and within a short period of its filing. *Id.* Here, at the time the May 2015 VOP was filed, no violation had yet occurred, as defendant had until August 2015 to

satisfy the conditions that the VOP petition alleged had been violated. Additionally, no hearing on the May 2015 filed VOP occurred until nearly three years later, and again, it was based on conduct different from that alleged in the May 2015 VOP petition, which is likely the reason the State filed a new petition for VOP in April 2016.

¶ 60    Notwithstanding the factual distinctions, *Thompson* provides the rationale for tolling a probation term, which we find instructive. Briefly, in *Thompson*, the juvenile probationer's term was set to terminate on November 4, 1976. *Id.* at 263. On that date, the State filed a supplemental petition alleging that on November 3, 1976, the juvenile had committed a criminal offense. *Id.* Upon the State's motion, the trial court set a trial date on the petition for November 23, 1976. After the hearing, the court made a finding of delinquency and committed the juvenile to the Illinois Department of Corrections. *Id.* at 264.

¶ 61    On appeal our supreme court considered whether revocation of the juvenile's probation was improper where the violation occurred prior to expiration of his probation term, but the hearing on the violation occurred afterward. *Id.* The juvenile argued that the court's revocation judgment was void because by the time of the hearing, his probation term had expired, divesting the court of jurisdiction. *Id.* at 264-67. Citing to the Code, the juvenile argued that had the legislature intended a juvenile's term of probation to be extended, it would have included a provision in the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, ¶ 705-3(6)), like for adults in section 5-6-4(2) of the Code. *Thompson*, 79 Ill. 2d at 266-67; see Ill. Rev. Stat. 1977, ch. 38, ¶ 1005-6-4(a) ("The issuance of *** [a] warrant or summons shall toll the sentence of probation or of conditional discharge *** until the final determination of the charge, and the term of probation[ ] [or] conditional discharge *** shall not run so long as the offender has not answered the summons or warrant.").

¶ 62    In rejecting the juvenile's argument, the court distinguished between juveniles, for whom jurisdiction is controlled by the Juvenile Court Act, and adults. *Thompson*, 79 Ill. 2d at 267. With respect to tolling, the court explained that the court does not lose jurisdiction over the minor once the period of probation ends. *Id.* Instead, the court loses jurisdiction over a minor only where it has entered a final closing and discharge order when the minor reaches the age of 21. Conversely, with adults, if a probation term were to run without a mechanism by which the period could be tolled, "the court could lose jurisdiction over the probationer for the offense allegedly committed in violation of the conditions of probation." *Id.* (citing *People v. Cahill*, 300 Ill. 279, 289 (1921)). Ultimately, the court held the fact that the hearing and the finding occurred after the period of probation had expired did not diminish the court's authority since the violation had occurred prior to the expiration of the probationary period. *Id.* at 266.

¶ 63    As *Thompson* makes clear, the purpose of tolling under the Code is to preserve the court's jurisdiction, not as a later justification for the failure to timely conduct the requisite violations hearing. Here, there was no danger in the court's loss of authority to adjudicate the alleged May 2015 violations. Expiration of the probation term would not occur until August 2015, providing two months for the required conditions to be met and two months after the State's petition for VOP had been filed. Further, by the time of the September 2015 court proceeding, it was clear to the court and the State that the conditions of the February 2014 probation sentence had been satisfied. Thus, there was no need to toll the term.

¶ 64    Nothing in *Thompson* can be read or inferred to stand for the proposition that a VOP may indefinitely toll the term of a defendant's probation. The State's unsubstantiated May 2015 petition for VOP could not serve to toll defendant's completed probation term to June 2018. Indeed, caselaw is clear that, absent the tolling of a probation term, after the service of a probation violation

petition, a court lacks authority to revoke a defendant's probation after the probation term has expired. See *People v. Bedell*, 253 Ill. App. 3d 322, 336 (1993). By the time of defendant's 2016 criminal offense, his 2015 probation term had long since expired, without evidence of any violations. Thus, the prior unsupported petition for VOP could serve neither to toll the probation term nor as the basis for the court's 2018 probation revocation.

¶ 65    The State argues that its April 2016 VOPs were proper as defendant's probation had been tolled up to that date by the filing of the May 2015 petition and "notably, the VOPs filed in April further tolled defendant's probation." The State's bootstrap argument seeks to use the tolling mechanism as both a sword and a shield. We know of nothing in statute or in caselaw that would permit the use of tolling in the manner advocated here by the State. In any case, having determined that extension of defendant's probation term was in violation of due process, the April VOP had no tolling effect on the earlier filed May 2015 petition for VOP. Thus, there was no VOP on which the later filed April 2016 petition for VOP could attach.

¶ 66    "To a greater or lesser degree, it is always true of probationers *** that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only…conditional liberty properly dependent on observance of special [probation] restrictions.' [Citation.]" (Internal quotation marks omitted.) *People v. Morger*, 2019 IL 123643, ¶ 18 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). We hold that once the date of a probation term expires and there is an assertion that the conditions have been satisfied, absent proof of any alleged violations, the petition can have no continuing tolling effect. Otherwise, and particularly on the facts of this case, a defendant who has satisfied the conditions of probation is subject to a greater sentence than the one for which he bargained and his liberty is thereby restricted without due process

¶ 67                                    F. Harmless Error

¶ 68    Having determined that defendant was denied due process, we must nonetheless determine whether the violation was harmless. See *People v. Mitchell*, 152 Ill. 2d 274, 326 (1992) (after finding a due process violation, an appellate court must also determine whether the violation was harmless). We may affirm only if, after considering all of the other evidence, we can conclude that the error was harmless beyond a reasonable doubt. *Id.* An error may be deemed harmless if the State can demonstrate beyond a reasonable doubt that the error did not contribute to the verdict. *People v. Williams*, 2013 IL App (1st) 111116, ¶ 93 (citing *People v. Patterson*, 217 Ill. 2d 407, 428 (2005)).

¶ 69    Having set forth in detail the facts of this case, we need not repeat them here. In sum, we cannot find that the court's continuing extensions of defendant's February 2014 probation term without a hearing and finding a violation, which formed the basis of the court's June 2018 probation revocation and 10-year sentence, was not harmless beyond a reasonable doubt. Thus, reversal is required.

¶ 70                                    III. CONCLUSION

¶ 71    In this case, the court entered and continued the State's May 2015 petition for VOP, as if biding its time, until finally, some three years later, defendant was charged and convicted of another offense. Although we do not condone the conduct that, in the first instance, resulted in defendant's introduction to the criminal justice system, we cannot turn a blind eye to the court proceedings up to June 2018 that, finally and ultimately, yielded the trial court's seeming desired result, that being a probation violation. Every continuance beyond defendant's successfully completed term date not only impugned the integrity of the criminal justice process but served to erode confidence in our justice system.

¶ 72    For the reasons stated, we reverse the judgment of the circuit court on the State's May 2015

petition for VOP and vacate the sentences entered thereon.

¶ 73    Reversed in part and vacated in part.

**No. 1-19-0129**

| | |
|---|---|
| **Cite as:** | *People v. Tolliver*, 2021 IL App (1st) 190129 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 13-CR-10271, 13-CR-10272, 16-CR-7125; the Hon. Diane Cannon, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Brett C. Zeeb, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People. |