2023 IL App (1st) 221560-U
Order filed: October 26, 2023

FIRST DISTRICT
FOURTH DIVISION

Nos. 1-22-1560 & 1-22-1561 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 10489 |
| | ) | |
| LEALLEN SMITH, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's judgment revoking defendant's probation.

¶ 2    Defendant LeAllen Smith appeals from the trial court's revocation of his probation, and its imposition of an aggregate sentence of four years and three months imprisonment. On appeal, defendant contends that the trial court deprived him of due process where its improper admonishments to defendant's sole witness caused her to change her testimony prejudicing the outcome of the revocation of probation proceeding. We affirm.

¶ 3    In 2021, defendant, in a negotiated plea, pleaded guilty to burglarizing a vehicle belonging to Jose Gomez and to felony resisting arrest in exchange for the State's recommendation of concurrent sentences of two years' probation. The trial court accepted the plea and imposed the

recommended sentence. As conditions of his probation, defendant was to report by phone to the probation department monthly, refrain from possessing a firearm or any other dangerous weapons, and avoid contact with Gomez.

¶ 4    In January 2022, the State filed a petition for violation of probation alleging that defendant had failed to report to the probation department. At the bond hearing on the violation, a probation officer, testified that defendant had failed to report by phone for four months, but he had been using the wrong phone number. Since correcting the phone number, defendant had been in compliance. However, the State was granted leave to file a supplemental petition for violation of probation alleging that defendant had "committed aggravated assault with a firearm."

¶ 5    Thereafter, on March 31, the court held a hearing on the supplemental petition. To begin, the trial court, at the request of the State, took judicial notice of "the probation." Additionally, the State clarified that the supplemental petition arose out of a February 26, 2022 incident involving Gomez. The State called Gomez as its sole witness and defendant called only Niesha Amerson.

¶ 6    Gomez testified that, on February 26, around 1:00 a.m., he received a phone call from Amerson, his girlfriend. Amerson asked him to pick her up from her house, where she was having an argument with defendant. Gomez picked up Amerson in his car, and as they were returning to his house, Gomez saw defendant's vehicle driving in the area. Gomez parked and defendant drove closer. Gomez went to his house and tried to unlock the door. Defendant exited his car and confronted Gomez about Amerson "using him just for babysitting the kids." Gomez called 911. Defendant returned to his vehicle, rolled down his window, pointed a gun at Gomez, and stated "I'm going to kill y'all." As a result, Gomez was placed in fear of receiving a battery. When the police arrived, defendant was gone. On cross-examination, Gomez responded in the affirmative

that, on February 26, Amerson was in his car on the passenger's side. Gomez further testified that it was dark outside, but there was a light in front of his house.

¶ 7    Amerson, on direct examination, testified that Gomez has been a friend for several years. She denied being in Gomez's vehicle on February 26. On cross-examination by the State, Amerson explained that she and defendant are "partners," meaning they co-parent their child and are on speaking terms. When asked whether, prior to being with Gomez on February 26, she had an argument with defendant, she stated that it was a disagreement, not an argument. She denied calling Gomez for a ride, being in Gomez's car, and being near his house on that day. She denied providing her information to a police officer at the scene. In response to the State asking whether she "[had] a romantic relationship with [Gomez]," she stated "Not right now." The trial court asked, "How about on February 26th?" and she responded that they have not been in a romantic relationship since 2021.

¶ 8    At this point in Amerson's testimony, the following discussion occurred:

"THE COURT: Stop right there for a second. Stop right there.

Is there a public defender in the – in the courtroom?

MS. COOPER [(ASSISTANT STATE'S ATTORNEY)]: Ms. Jones is here as well as Mr. Moore.

THE COURT: Okay. Good. So here, before you finish testifying, would you like to speak to an attorney?

THE WITNESS: Yeah. Should I?

THE COURT: Because what I'm telling you is there are two things going on here, you have sworn an oath. If I find that you are perjuring yourself, perjury is a felony. I could also not rely on the State's Attorney to bring perjury charges against you, I can find you in

indirect criminal contempt for lying on the stand, which means that I could sentence you to custody of the sheriff for up to six months unless I decide I want to do more than that, in which case you would have the right to a trial by jury and then I could sentence you to anything. There is no maximum. So before you finish your testimony, would you like to speak to an attorney?

THE WITNESS: I don't understand nothing that you said.

THE COURT: Before you finish your testimony, would you like to speak to an attorney?

THE WITNESS: Sure.

THE COURT: The choice is yours. I'm just telling you the possible outcomes.

THE WITNESS: Okay.

THE COURT: So would you like to?

THE WITNESS: Yes."

The court took a recess.

¶ 9     When the proceedings reconvened, the trial court asked Amerson if she had an opportunity to talk to an attorney. She responded "Yes, I did." The court asked if she needed more time to talk to the attorney, to which she responded, no. The court inquired as to whether she wanted to continue to testify and she responded, "Yes."

¶ 10    The State then continued its cross-examination of Amerson. She testified that, on February 26, she had an argument with defendant and called Gomez. Thereafter she was with Gomez, in his vehicle and about to go into his house when she observed defendant drive by Gomez's house. She did not make eye contact with defendant and did not hear or see the interaction between Gomez and defendant because at that point, she was "almost already inside" of Gomez's house. She further

testified that defendant did not make a threat and did not produce a gun. Amerson acknowledged, however, that defendant and Gomez probably "crossed words." She did not recall what time of day this incident occurred. She did provide her driver's license to the officers at the scene. Amerson heard that defendant was incarcerated and called defendant's attorney but not the police or the State's Attorney.

¶ 11    On redirect examination by defendant, Amerson testified that the police officers did not ask her questions at the scene. She would not lie on defendant or Gomez's behalf. In response to defendant's counsel asking "Are you telling the truth here today?", she responded "Yes, I am." On recross-examination, Amerson testified that the truth was that "I was there."

¶ 12    Thereafter, the court questioned Amerson:

"THE COURT: Okay. Who came up with this idea that you weren't there? Who told you to say that?

THE WITNESS: Nobody told me to say that.

THE COURT: You did that all on your own?

THE WITNESS: To answer your question if I did it on my own, I was not sure what to say and I –

THE COURT: You weren't sure whether you should tell the truth under oath?

* * *

THE WITNESS: I'm instructed that I need to tell the truth, yes."

¶ 13    At the close of evidence, the State argued that Gomez's testimony was credible and that Amerson had lied on the stand and her testimony was self-serving. Defendant argued that Amerson was not impeached with respect to defendant not having a gun and not having made a threat.

¶ 14    The trial court in its oral ruling, stated:

"So as it applies to this woman's testimony, in the best of worlds, she didn't say there was a threat, she didn't say there wasn't a gun. She claims she didn't hear what they were saying and didn't see a gun. That's apples and oranges. That's if she was credible at all. She has zero credibility except for the part where she admits that, yeah, oh, yeah, I was there and I gave my identification to the police. That's pretty much it.

Clearly, the State has proven its – made its burden in this violation. There's a finding of violation of probation. Probation is hereby revoked. Bond's revoked both matters."

¶ 15 On May 2, 2022, defendant filed a motion for a new hearing, arguing that the trial court erred when it interrupted Amerson's testimony and admonished her regarding perjury causing Amerson to change her testimony. The trial court denied the motion and sentenced defendant to two years and nine months for burglary, consecutive to 19 months for resisting arrest, for an aggregate sentence of four years and three months. Defendant filed a motion to reduce his sentence, which was denied on September 22, 2022.

¶ 16 On appeal, defendant argues that the trial court, in revoking his probation, deprived him of due process where its admonishments were improper and caused Amerson, his sole witness, to change her testimony, prejudicing the outcome of the proceeding.

¶ 17 As an initial matter, the State argues that defendant forfeited this issue by failing to contemporaneously object to the trial court's admonishments. Generally, to preserve an issue for review, "[b]oth a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis omitted.) *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); see also *People v. Turner*, 233 Ill. App. 3d 449, 452 (1992) (extending the

holding of *Enoch* to probation hearings). Defendant acknowledges his failure to preserve the issue but asserts that we may review this issue under several grounds.

¶ 18    First, defendant, citing *People v. Sprinkle*, 27 Ill. 2d 398 (1963), argues that forfeiture is less rigidly applied when the conduct of the trial court is at issue. In *Sprinkle*, our Supreme Court held that a less rigid application of the forfeiture rule "should prevail where the basis for the objection is the conduct of the trial judge." *Id.* at 401. Where a jury is not present, such as in a bench trial, this rule should be applied

> "when counsel has been effectively prevented from objecting because it would have 'fallen
>
> on deaf ears.' [Citation.] But our supreme court has also called for applying this exception
>
> only in extraordinary circumstances, such as when a trial judge makes inappropriate
>
> remarks to a jury [citation] or relies on social commentary, rather than evidence, in
>
> sentencing a defendant to death [citation]. [Citation.] And [t]hat we have seldom applied
>
> *Sprinkle* to noncapital cases further underscores the importance of uniform application of
>
> the forfeiture rule except in the most compelling of situations." [Citation.] (Internal
>
> quotation marks omitted.) *People v. Evans*, 2017 IL App (1st) 150091, ¶ 21.

¶ 19    Here, the trial court's admonishments were made in a revocation of probation hearing, a noncapital case and not in the presence of a jury. There is no indication that the court prevented defendant's counsel from asserting an objection to the admonishments or would have turned a deaf ear to an objection. We find no compelling reason, under *Sprinkle*, to relax the forfeiture rule here.

¶ 20    Defendant next argues, citing *Enoch*, 122 Ill. 2d at 190, that because the issue raised is a constitutional one, we should grant review under the constitutional issue exception. However, the exception only covers " 'constitutional issues that were *properly raised at trial*' [citation], and where defendant's only omission was 'merely *** fail[ing] to raise it in a posttrial motion.' "

(Emphasis in original.) *People v. Burnett*, 2015 IL App (1st) 133610, ¶ 79 (quoting *People v. Cregan*, 2014 IL 113600, ¶¶ 16-18). Because defendant failed to object to the admonishments at the hearing, the constitutional issues exception is not available to defendant.

¶ 21    Finally, defendant argues that we should consider the issue as plain error. Under the plain error doctrine, we may review errors that have not been preserved for review where those errors affect substantial rights. See *People v. Cox*, 197 Ill. App. 3d 239, 242 (1990) (invoking the plain error doctrine where defendant alleged a violation of his due process rights during a probation hearing). The plain error doctrine allows us to remedy a "clear and obvious error" in two instances, (1) where the evidence in the case is so closely balanced, the error alone threatened to tip the scales of justice against defendant, regardless of the seriousness of the error; or (2) where the error was so serious, defendant was denied his substantial rights, thus denied a fair trial. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The burden of persuasion lies with the defendant. *Id*. The first step under either prong is determining whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 22    A defendant in a probation revocation proceeding is entitled to "minimum requirements" of due process. *People v. Hall*, 198 Ill. 2d 173, 177 (2001) (defendant responding to a petition to revoke probation is entitled to fewer rights than a defendant facing trial). These requirements are satisfied if defendant is given notice of the alleged violations and has the opportunity to be heard, to present evidence and confront witnesses, and to be represented by counsel. *Cox*, 197 Ill. App. 3d at 243. We review *de novo* whether a defendant's due process rights have been violated. *People v. Tolliver*, 2021 IL App (1st) 190129, ¶ 41 (citing *Hall*, 198 Ill. 2d at 177).

¶ 23    A trial court has discretion to admonish a witness about their right to counsel and the consequences of lying under oath. See *People v. King*, 154 Ill. 2d 217 (1993) and *Webb v. Texas*,

409 U.S. 95 (1972). If a trial court chooses to admonish the witness itself instead of appointing counsel, "it must walk the fine line" between advising and threatening the witness. *People v. Morley*, 255 Ill. App. 3d 589, 597 (1994). A trial court violates defendant's right to present witnesses in his or her own defense where its admonishments are improper and influence a defense witness not to testify, which prejudices the outcome of the trial. *King*, 154 Ill. 2d at 224-25 (citing *Webb*, 409 U.S. at 98).

¶ 24    Improper admonishments include those which are "unnecessarily strong" or "threatening" and result in preventing the witness from making a free and voluntary choice of testifying. *Id.* A defendant suffers greater harm if their sole witness is improperly prevented from testifying. *King*, 154 Ill. 2d at 225-26. A trial court's admonishments are proper "if they are made outside the presence of the jury [citation] they are neutral, and if the judge gives the witness additional time to decide whether to testify as well as to consult with counsel [citation]." *People v. Vaughn*, 354 Ill. App. 3d 917, 926 (2004). Admonishments are also proper if they inform the witness of the applicable law and are not intimidating or threatening. *People v. Davis*, 88 Ill. App. 3d 265, 270 (1980). The specific facts and circumstances of each case must be considered in making this determination. *King*, 154 Ill. 2d at 225.

¶ 25    Considering the facts and circumstances of this case, we find that the trial court's admonishments were not improper. Amerson initially testified that, on February 26, she did not call Gomez, did not ask him for a ride, was not present at his house and did not provide information to the police at the scene. She denied they were in a romantic relationship at that time. Having heard this testimony, the trial court, first determined that there was a public defender present in the courtroom. The court then informed Amerson of the applicable law and possible outcomes of lying under oath. The court gave her the choice to speak with an attorney prior to continuing her

testimony. Amerson, after not understanding the comments from the trial court, accepted the opportunity to speak with a lawyer and the court took a recess. When the hearing recommenced, the court allowed the resumption of her testimony only after confirming that she had spoken to the public defender, did not need additional time, and wished to continue to testify.

¶ 26    The circumstances here are distinguishable from those in the cases cited by defendant, *Webb* and *King*. Instead, we find that the trial court's admonishments were more similar to those in *Davis*, as they were informative and not intimidating or threatening.

¶ 27    In *Webb*, 409 U.S. at 95, the trial court, on its own initiative, admonished the defense's sole witness, who was already in the penitentiary. Specifically, the trial court stated:

"Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [*sic*] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking." *Id.* at 95–96.

¶ 28    After these admonishments, the witness refused to testify. The Supreme Court held that the admonishments were threatening and "effectively drove [the] witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." *Id.* at 98.

¶ 29    In *King*, 154 Ill.2d at 217, the trial court admonished the codefendant prior to testifying at defendant's trial. The codefendant had pleaded guilty to the armed robbery at issue, but had not yet been sentenced to the recommended eight years' imprisonment. *Id.* The court stated:

> "I just wanted you to know that if you do testify and you testify in a manner that I believe is perjurious, which would be not the truth, I would, on my own motion, vacate the plea of guilty. You'd then be as if the plea had never taken place. And we'd probably have to have a trial in connection with that matter.
>
> However, if you testified in this matter and testify in what I believe is a truthful manner, I would not vacate that plea and I would allow you then to be sentenced to the 8 years that we previously agreed upon.
>
> * * *
>
> "[Defense counsel] is going to call you as a witness on behalf of the-of the defendant. You have a right to testify if you wish to. You also have a right, because you still are in jeopardy, so to speak, some things can happen to you which could effect [*sic*] your freedom, *et. cetera* [*sic*], because you have not been convicted. You have a right to exercise your Fifty [*sic*] Amendment right and not testify for fear that what ever you might testify to could be used against you. I have to tell you that.
>
> And I also would like to know if you're going to testify on behalf of [the defendant] or are you going to assert your right as your counsel has advised you to?" *Id.* at 222.

Following these admonishments, the codefendant did not testify. *Id.* at 217. The court found that the admonishments were improper as the trial court misstated the facts and forced the witness to choose between not testifying and taking the chance that the judge would withdraw his offer of eight years' imprisonment. *Id.* at 225.

¶ 30    In *Davis*, 88 Ill.App.3d at 269 the trial court declared two State witnesses to be hostile, and then warned them that if their answers were substantially different on a material point from prior sworn testimony, they could be charged with perjury or contempt of court. The trial court further explained:

>    "[I am] not telling you what you have to testify to, but I am telling you right now if your answers differ substantially from this prior trial, the State's Attorney could bring a charge of purgery [*sic*]. * * *
>
>    I do not mean to intimidate you, I mean to warn you of the consequences of what will happen if you do not answer the questions the same as the other trial because that, you see, would place two inconsistent statements under oath, do you understand what I mean?
>
>    And this is a textbook definition of purgery [*sic*] that was explained to you. I am not even going to bring the charge, the State's Attorney would make that decision and another judge hear it, but I am warning you for your own benefit as an individual who is testifying here that you could be subjected to a criminal prosecution if your answers differ substantially." *Id.* at 269-70.

This court, distinguishing the admonishments in *Webb*, held that the trial court's admonishments "did not intimidate the witnesses but merely informed them of the applicable law." *Id.* at 270.

¶ 31    Unlike the witnesses in both *Webb* and *King*, Amerson did not refuse to testify after the admonishments and speaking with an attorney, but instead voluntarily retook the stand and

continued with her testimony. Further, the admonishments here, as in *Davis*, were not threatening or "unnecessarily strong." Rather, the admonishments informed Amerson of the possible consequences of not telling the truth after swearing an oath. The court also gave her the opportunity to speak with an attorney, which she did. The court reiterated that it was her "choice" and it was informing her of the "possible outcomes."

¶ 32 Even if the trial court's admonishments could be considered improper, we find no reversible error where the record does not demonstrate that it was the trial court's admonishments that "influenced" or "intimidated" Amerson into changing her testimony. See *People v. Blalock*, 239 Ill. App. 3d 830, 836-37 (1993) (finding no reversible error where the trial court's "inappropriate" admonishments had little persuasive effect on the witness, but allowed additional time to make an informed decision). As previously discussed, after Amerson indicated that she had not understood the admonishments, the trial court provided her with an opportunity to speak with an attorney. After a recess, Amerson resumed her testimony after confirming both that she had spoken to an attorney and did not need any more time. The record demonstrates that Amerson made a voluntary and informed decision to change her testimony and admit that she was at Gomez's house on February 26.

¶ 33 Therefore, no reversible error occurred, and we need not review defendant's argument under plain error. See *People v. Bailey* 409 Ill. App. 3d 574, 588 (2011).

¶ 34 For the reasons set forth above, we affirm the trial court's decision revoking defendant's probation.

¶ 35 Affirmed.